United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN LAMAR MOORE,<br><br>    Petitioner,<br><br>    v.<br><br>DEBBIE ASUNCION,<br><br>    Respondent. | Case No. 16-cv-06976-WHO (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner Kevin Lamar Moore seeks federal habeas relief from his state convictions on the grounds that (i) his due process right to a fair trial was violated when he was tried jointly with a co-defendant; (ii) his Confrontation Clause rights were violated by the joinder; (iii) the trial court violated his right to due process by failing to grant his motion for a mistrial and his motion for a new trial; (iv) there was insufficient evidence to support his robbery conviction; and (v) his sentence violated the Eighth Amendment. None of these claims has merit. Accordingly, the petition is DENIED.

## BACKGROUND

According to the evidence presented at trial, Moore and his co-defendant Elijah Matthew Hall assaulted victims Jonathan Gomer and Robert Ehrhardt and robbed

Gomer of some of his property. (Ans., Dkt. No. 10-25 (State Appellate Opinion[1]) at 109-110.[2])

The facts of the case are as follows. On May 9, 2011, victims Jonathan Gomer and his friend Robert Ehrhardt invited people to Gomer's house to make music in his music studio. Co-defendant Hall, an acquaintance, telephoned, asked to "hang out," and Gomer invited him over. He arrived with a woman Gomer had not met before. She was later identified as Hall's girlfriend, Stephanie Contreras. Two hours later, petitioner Moore, Hall's friend, also a stranger to Gomer, arrived. He was introduced as "K." Another man, also Hall's friend, came to the gathering.[3] The other people at the house at various times in the evening were Jason Huff and his girlfriend Catherine Boyd; Nathan Wilson; Auston Cowan; Jenee Dumolin and her boyfriend Henry Gill; and another couple, Daniel and Rachel. After some time, Contreras felt unwell, perhaps because of her drinking, and, with the assistance of Hall and Gomer, went to lie down in Gomer's room, where she more or less passed out. Later in the evening, the only people left were Gomer, Ehrhardt, Hall, his two friends, and Contreras.

The last thing Gomer remembered before waking up in the hospital was "trying one take" of a rap song. He had suffered a concussion, a fractured nose, and a laceration on his lip. After being released from the hospital and returning to his house, he noticed the following items were missing: a TV, a laptop, his cell phone, his house and car keys, his keyboard, Ehrhardt's cell phone, a computer monitor, and his camera.

While Gomer was "trying one take," Hall punched Ehrhardt in the face several times. Ehrhardt saw Moore standing nearby with the other man. The man looked surprised at Hall's actions. Moore did not.

Hall stopped hitting Ehrhardt and then attacked Gomer until he fell unconscious to the floor. When Ehrhardt stood up, Moore "grabbed a chair, lifted it a few inches" and asked him

---

[1] *People v. Moore*, No. A140333, 2015 WL 5257935 (Cal. Ct. App. Sept. 9, 2015).

[2] The pages cited are those generated by the Court's electronic filing system.

[3] This other man was identified as Buddy Walker. (Ans., Dkt. No. 10-17 at 98.)

2

"What are you going to do?" and then told him to get down on the ground.[4] Ehrhardt obeyed. Just before he did so, he noted that Moore was wearing work gloves, which he hadn't seen him wearing earlier in the evening.[5] He heard what sounded like the studio equipment being moved, and then he felt someone go through his pockets and take his cell phone and Gomer's keys. Ten or fifteen minutes later, Ehrhardt heard the men leave.

At trial, a great deal of identification evidence was presented. Ehrhardt, Huff, Cowan[6], and Dumolin[7] all identified Moore from a photographic line up. Gomer, Ehrhardt, Huff, and Boyd all identified Moore at trial. (Ans., Dkt. No. 10-25 at 115-118.)

Moore and Hall presented different defenses at trial. Moore's defense was based on misidentification. (*Id.* at 121.) Hall's was quite different. He testified that he attacked Gomer and Ehrhardt because he believed one or both of them might have molested Contreras while she was passed out from drink. (*Id.* at 120.)

In 2013, a Sonoma County Superior Court jury convicted Moore of robbery and assault by means of force likely to cause great bodily injury. The jury found true allegations Moore had four prior convictions for serious or violent felonies. He was sentenced to 35 years to life in state prison. His attempts to overturn his convictions in state court were unsuccessful. This federal habeas petition followed.

---

[4] Ehrhardt admitted on cross-examination that it could have been the other man (Buddy Walker) who told him to get down on the ground. But, "in his statement to the police shortly after the incident, [Ehrhardt] said that K[evin Moore] told him, 'Get down on the ground, motherfucker.'" (Ans., Dkt. No. 10-25 at 113 n.5.)

[5] (Ans., Dkt No. 10-14 at 54.) He also testified at the preliminary hearing he saw Moore wearing gloves after Hall's assault. (*Id.*, Dkt. No. 10-3 at 76-77, 94.) At trial, sheriff's deputy Charles Blount testified that Ehrhardt "told him that during the assault he noticed three people wearing gloves." (*Id.*, Dkt. No. 10-14 at 206.)

[6] At trial, Cowan could not identify anyone in the lineup (or in the courtroom) who had been at Gomer's house. (Ans., Dkt. No. 10-25 at 116.) He did admit at trial that he did identify Moore from a photographic lineup when he was shown it soon after the incident. (*Id.*) The investigating police detective, Cutting, testified at trial that Cowan identified Moore in that first photographic lineup without hesitation. (*Id.*)

[7] At trial, Dumolin identified Hall but not Moore. (Ans., Dkt. No. 10-25 at 116.)

3

**STANDARD OF REVIEW**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

**DISCUSSION**

I. **Right to a Fair Trial**

A criminal defendant has a due process right to a fair trial. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). Moore claims that being tried jointly with Hall rendered his trial

4

constitutionally unfair. His claim rests on (i) the allegedly prejudicial effects of Hall's behavior at trial, (not on the trial court's denial of his pretrial severance motion); (ii) the playing of a recording of a telephone conversation Hall had while in jail; and (iii) Hall's defense, which was antagonistic to petitioner's.

### (i) Hall's Courtroom Behavior

Hall was highly disruptive in court, so much so that he had to be removed from the proceedings for much of the trial. His objectionable behavior was summarized by the state appellate court:

> The disruption began with the first witness called by the prosecution. When the prosecutor began to question Gomer about being shown the photographic lineup, Hall interjected, 'Are we going to be dealing with the identification[,]' pressing his point that the identification was 'a serious problem' despite his attorney's and the court's attempts to stop his interruptions. Shortly thereafter, the prosecutor having established that Gomer did not identify [Moore] from the lineups and the only person he had confidently identified was Hall, Hall interrupted with, 'You want to talk about description, did he give a description[.]' The prosecutor turned to the subject of Cowan telling Gomer about the phone call he received and Hall's attorney made a hearsay objection; the court explained to the jury what hearsay is and instructed it not to consider the evidence for any purpose other than to explain the effect of the statement on the witness's state of mind. Hall cut in, 'That's a double edge[d] standard.'
>
> At this point, the court declared a recess and, outside the presence of the jury, told Hall that despite having promised before the trial started to comport himself properly, he had attempted to interrupt the proceedings four or five times and been admonished each time. The court told Hall his behavior was not making the jury think favorably of him and warned that he would be removed from the courtroom if he caused another disruption. Hall acknowledged that he understood, then again attempted to raise issues about the identification, causing the court to again warn him he would be removed if he interrupted the proceedings. After a recess and before the jury returned, the court warned Hall again that 'one more outburst' would result in his removal, emphasizing the visible negative reaction the jurors were having to the disruptions. The trial then proceeded for another hour without interruption.
>
> The next day, about an hour into Ehrhardt's testimony, when the witness answered 'no' to the question whether he had received any medical treatment as a result of the incident, Hall interrupted, 'Medical records disappeared out of the files, that's what happened.' After the court's '[e]xcuse me, Mr. Hall[,]' Hall repeated, 'No,

5

the medical records disappeared.'

The court called a recess, reminded Hall at length that he had been warned about disrupting the proceedings and stated that it would remove him from the court. Hall continued his comments about the medical records while the court ordered his removal. The court stated for the record that Hall had 'forfeited his right to be present to confront and cross-examine witnesses' by his 'complete disregard and disobedience of the court orders to maintain decorum in the courtroom and not interrupt the witnesses.' The court agreed to allow recesses for defense counsel to consult with Hall as needed and, as necessary, to address the prosecutor's need to have witnesses make in-court identifications. [Moore]'s attorney began to voice concern that [Moore] could be prejudiced by Hall's behavior, and the court directed her to make the argument at a break.

When the jury returned, the court explained that Hall was not present because he had violated the court's orders not to interrupt witnesses and asked for the jurors' commitment not to draw adverse inferences from Hall's behavior and not to consider this behavior with respect to [Moore].

Near the end of the day, during Boyd's testimony, Hall was returned to the courtroom and ordered not to interrupt the proceedings, and Boyd identified Hall as having been at Gomer's house on the night of the incident. The following day, the third day of testimony, Hall was brought to the courtroom for identification during Huff's testimony, then removed at the end of his testimony. In response to Hall's attorney's concerns about Hall being able to assist with his defense, Hall was permitted to be present for Dumolin's testimony. He then asked to leave the courtroom while the recording of the jail phone call was played for the jury. Hall was present in court for most of the next five days of trial, throughout the remaining witnesses' testimony and the prosecutor's and his own attorney's closing arguments.

During [Moore]'s attorney's closing argument, however, Hall interrupted repeatedly: 'That's totally different'; '[t]hat's a lie'; 'I'm not going to sit here and . . .'; '[t]hey are trying to make me out to be some kind of liar'; '[y]ou know, I'm not going to let her keep saying things that's a lie'; and, as the attorney asked the jury not to believe the story Hall had told, '[h]ow would you feel if you was molested though. Somebody raped you, how would you feel.' At this point, the court called a recess and removed Hall from the courtroom for the remainder of closing argument.

(Ans., Dkt. No. 10-25 at 122-127) (footnotes omitted).

Moore contends that this behavior rendered his trial fundamentally unfair. Hall's outbursts "and threats of violence" made the jurors afraid, thereby preventing them from

making a "reliable judgment based on the evidence admitted against" petitioner. (Pet., Dkt. No. 1-1 at 3.)

This claim was rejected on appeal. The court found that Hall's behavior was "neither as egregious nor as constant" as Moore portrays. (Ans., Dkt. No. 10-25 at 128-129.) Nor was it linked to Moore in any way. (*Id.* at 129.) Hall's behavior was "confined to speaking out of turn." (*Id.* at 128.) There "were no threatening physical motions, there was no yelling, and there were no threats of violence." (*Id.*) Also, when he attended trial after being removed for a time, "Hall was present without incident for five full days, until he was unable to control his interruptions" during Moore's attorney's closing argument. (*Id.*)

A joinder, or denial of severance, of co-defendants or counts may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process. *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997). A federal court reviewing a state conviction under 28 U.S.C. § 2254 does not concern itself with state law governing severance or joinder in state trials. *Id.* Nor is it concerned with the procedural right to severance afforded in federal trials. *Id.* Its inquiry is limited to the petitioner's right to a fair trial under the Constitution. To prevail, therefore, the petitioner must demonstrate that the state court's joinder or denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair. *Id.* This prejudice is shown "if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000).

Habeas relief is not warranted here. The state appellate court reasonably determined that Hall's behavior, however disruptive, did not deprive Moore of a fundamentally fair trial. First, his outbursts were rude, not violent or threatening.[8] It is reasonable to believe Hall's behavior might have made the jurors feel uneasy. But it is not reasonable to infer that his

---

[8] Hall's behavior did become louder and more aggressive later in trial. For example, persons in the courtroom could hear him yelling and screaming from his holding cell. (Ans., Dkt. No. 10-25 at 128, n.17.) However, this behavior occurred after the verdicts had been rendered on the substantive charges. (*Id.*) It therefore is not relevant to whether Hall's behavior had an injurious effect on the verdict.

7

behavior made them afraid *and* that that fear had a substantial and injurious effect or influence in determining their verdict. Moore offered no evidence to support this claim, which dooms it. *See Park v. California*, 202 F.3d 1146, 1150 (9th Cir. 2000) (petitioner must show that jury was "actually inflamed" to support his claim that consolidation of disparate criminal charges into one trial resulted in a fundamentally unfair trial).

Second, jurors are presumed to follow their instructions. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). The trial court instructed the jury to disregard Hall's behavior and not to consider it in relation to Moore.

Finally, the evidence against Moore was strong. There was strong identification evidence against him, which is discussed in detail below in Section I.iii.

The state court's rejection of this claim was reasonable and therefore is entitled to AEDPA deference. Moore's claim is DENIED.

### (ii) Hall's Telephone Conversation

At trial, the prosecution played a recording of one of Hall's jailhouse telephone conversations for the jury. In that call, Hall spoke with his girlfriend, Stephanie Contreras, who had come with him to Gomer's house on the night of the crimes. The recording was admitted over the objections of defense counsel:

> The court concurred with Hall's attorney's description of the recording as 'extremely prejudicial' and depicting Hall as 'somebody with a violent temper, yelling and screaming on the phone to his girlfriend.' The court agreed that the recording was 'extremely vociferous, loud, offensive' and the 'tone of voice is offensive, implies certain violent nature on the part of the speaker,' but pointed out that Hall generated the phone call and it was 'very probative.' The court stated that it was 'very clear all the way through that [Hall] was attempting to get [Contreras] to make some contact . . . with someone who was involved with this offense, to somehow alter testimony or to deter him from testifying or deter him from coming forward. The constant reference is made to the fact the next day is the preliminary hearing, that he's spending his time reading the law books, examining the case.
>
> Before playing the recording at trial, the court instructed the jurors: '[Y]ou are not to consider this tape recording or the evidence you are about to hear in the case against Mr. Moore. It is confined to the case as to Mr. Hall.'

(Ans., Dkt. No. 10-25 at 129-130.)

8

Moore claims that the playing of the recording resulted in prejudice. (Pet., Dkt. No. 1-1 at 7, 30.) His claim was rejected on appeal. The appellate court was "not persuaded" that the recording resulted in an unfair trial, even though what the jury heard was "considerably more volatile and threatening than anything displayed in Hall's conduct at trial." (Ans., Dkt. No. 10-25 at 131.) First, "[t]he actual contents of the phone conversation did not refer to [Moore] or in any way tie Hall's comments to him." (*Id.*) Second, the jury was instructed to use the evidence only against Hall. Finally, that Moore "did not demonstrate the lack of restraint and composure shown by Hall at trial, and reflected in the phone call, would have diminished any risk of jurors assuming [Moore] shared Hall's tendencies or approved of his conduct."[9] (*Id.*)

Habeas relief is not warranted here because the state appellate court had a reasonable basis to deny Moore's claim. I must presume that the jurors followed their instructions to regard the recording as relevant only to Hall. *Marsh*, 481 U.S. at 206. And Moore's restraint and composure would have starkly contrasted with Hall's volatility and rudeness. This contrast would have greatly diminished or eliminated any risk that the jury would associate Hall's language and behavior with Moore.

The state appellate court's rejection of this claim was reasonable and therefore is entitled to AEDPA deference. Moore's claim is DENIED.

**(iii)  Antagonistic Defenses**

Moore claims the joinder with Hall resulted in an unfair trial because his defense strategy clashed with Hall's. (Pet., Dkt. No. 1-1 at 18-19.) Hall's defense was that he attacked Gomer and Ehrhardt because he thought they might have sexually molested his girlfriend Stephanie Contreras. Moore's defense was misidentification, the witnesses having given uncertain identifications. Moore claims that his defense was destroyed when Hall identified him at trial as the other perpetrator.

This claim was rejected on appeal because there was strong identification evidence

---

[9] Moore raised further claims based on specific instances in which the recording was replayed by the prosecutor to support his arguments. The state appellate court rejected these claims because the transcript did not report the excerpts Moore pointed to. (Ans., Dkt. No. 10-25 at 131.)

9

independent of Hall's testimony, which was summarized by the state appellate court as follows:

> Ehrhardt, Huff, Cowan, and Dumolin identified [Moore] in photographic lineups soon after the incident. Gomer did not, nor did Boyd, but both identified [Moore] at trial. E[h]rhardt also identified [Moore] at trial, as did Huff. [Police detective] Cutting identified [Moore] as the person who fled from the police in the car in which Contreras and Hall had arrived at the location arranged by the police on May 11, a car that fit the description of the one in which Ehrhardt saw [Moore] drive to Gomer's house on May 9, and also had seen [Moore] driving the prior weekend, when Hall came to the house looking for Gomer. Contreras, while she attempted to avoid identifying [Moore], eventually acknowledged ("I guess so") that [Moore] was the person she knew as "K," with whom she and Hall left Gomer's house, and who drove them to Santa Rosa the next day in a car that belonged to K. Contreras had told Detective Cutting that she left Gomer's house on the night of the incident with Hall, [Moore] and Buddy Walker.

(Ans., Dkt. No. 10-25 at 134.)

Habeas relief is available only if a criminal defendant were deprived of a fundamentally unfair trial. "[T]here is no clearly established federal law requiring severance of criminal trials in state court even when the defendants assert mutually antagonistic defenses." *Runningeagle v. Ryan*, 686 F.3d 758, 774 (9th Cir. 2012). As noted above,

Habeas relief is not warranted here because there was exceptionally strong identification evidence apart from Hall's testimony. Seven witnesses other than Hall identified Moore as the other perpetrator. Ehrhardt testified that Moore threatened him with a raised chair when he tried to stand up after Hall's attack. On such a strong record, Moore's claim clearly lacks merit. Hall's testimony and Moore being tried jointly with him did not result in prejudice or otherwise deprive Moore of a constitutionally fair trial. Even if Hall had not testified, there was ample, even overwhelming, identification evidence.

Moore cites *Zafiro v. United States*, 506 U.S. 534 (1993) as support for his claim. In that case, the Supreme Court considered whether the Federal Rules of Criminal Procedure required severance of co-defendants if they had "mutually exclusive defenses." This case is not helpful to Moore for two reasons. First, *Zafiro* discusses severance almost exclusively as it arises in federal trials and in light of federal procedural rules, not how courts should regard

10

severance on federal habeas review of a state conviction. As noted above, federal habeas courts reviewing state convictions should not be concerned with the procedural right to severance afforded in federal trials. *Grisby*, 130 F.3d at 370. Furthermore, the Ninth Circuit has declared that "[b]y its own wording, *Zafiro* only applies to federal and not state court trials." *Collins v. Runnels*, 603 F.3d 1127, 1131-1132 (9th Cir. 2010).

Second, to the extent it might apply to petitioner's severance claim, *Zafiro* does not aid Moore. The Court determined that severance should occur "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Evidence technically admissible only against one defendant, or exculpatory evidence that would be available only if a defendant were tried alone were cited as examples. *Id.* The notion that defendants are entitled to severance "merely because they have a better chance of acquittal in separate trials" was explicitly rejected. *Id.* at 540. The Court noted that "the courts have reversed relatively few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses." *Id.* at 538. The decisive inquiry, and the one in which this Court engages, is whether prejudice resulted. *Id.* at 538-539.

The state appellate court's rejection of the claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

## II. Confrontation Clause

Moore claims that being tried jointly with Hall violated his rights under the Confrontation Clause. Habeas relief is not warranted on this claim because it is (i) unexhausted; and, (ii) even if it were exhausted, it would fail on merits.

### (i) Exhaustion

Moore never raised a Confrontation Clause claim to the California Supreme Court, or at any time in his state post-conviction judicial proceedings. (Ans., Exs. C-H, Dkt. No. 25 (Moore's State Appellate and State Supreme Court Briefs).) Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are first required to exhaust state judicial remedies, either on direct appeal or

11

through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 515–16 (1982). Because the claim is unexhausted, it is DISMISSED.

### (ii) Confrontation Clause

Even if the claim had not been dismissed as unexhausted, it would be denied as meritless. The bulk of the claim is simply a reiteration of Moore's prior assertions that Hall's behavior deprived him of a fundamentally fair trial. I addressed this claim earlier.

Moore describes his Confrontation Clause claim as follows:

> As Hall's trial testimony contradicted the [*sic*] Petitioner's defense, Petitioner was unable to properly cross-examine Hall in order to challenge Hall's assertions. Further, Hall's statements during Petitioner's closing argument could not be properly challenged as the damage was already done and there was no opportunity to examine Hall in that regard.

(Pet., Dkt. No. 1-1 at 28.) Also, according to Moore, Hall's repeated outbursts interrupted Moore's counsel's examination of witnesses so much as to deprive Moore of his right to confront witnesses. (*Id.* at 27.)

Rather than posing general allegations, a federal habeas petition "is expected to state facts that point to a real possibility of constitutional error." *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (internal quotation marks and citation omitted). This claim, if it were examined on the merits, would fail because Moore was not prevented from examining Hall. Hall took the stand and was available for cross-examination. Moore points to nothing that prevented defense counsel from questioning Hall on any relevant matter, including the defendants' different defenses. This lack of specific and supportive detail dooms his claim. Moreover, Hall's outbursts during closing argument were not testimony nor any other form of evidence. Moore was not denied the opportunity to confront the evidence presented against him.

## III. Denial of New Trial Motion

After the verdicts were announced, Moore moved for a new trial on the same grounds he raises in the instant petition — that Hall's behavior during trial, the contents of his jailhouse

12

conversation, and his contrary defense resulted in prejudice to Moore. (Pet., Dkt. No. 1-1 at 29.)

This claim fails. There is no clearly established constitutional right to move for a new trial, or to have such a motion granted. "The Constitution itself, of course, makes no mention of new trials." *Herrera v. Collins*, 506 U.S. 390, 407 (1993) (declining to find that Texas's refusal to entertain a new trial motion that was untimely under state rules "transgresses a principle of fundamental fairness 'rooted in the traditions and conscience of our people.'") Rather, the right to file a new trial motion is a state statutory right, not a constitutional one. *See Gupta v. Beard*, No. CV 14–1709–CJC KK, 2015 WL 1470859, at *27 (C.D. Cal. Mar. 30, 2015) (quoting *People v. Dillard*, 168 Cal. App. 2d 158, 167 (Cal. Ct. App. 1959)) ("A 'motion for new trial in a criminal case is a [California] statutory right'"). Violations of state law are not remediable on federal habeas review, even if state law were erroneously applied or interpreted. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Little v. Crawford*, 449 F.3d 1075, 1082 (9th Cir. 2006).

Furthermore, I concluded above that Moore is not entitled to relief on grounds that the underlying fundamental right — the due process right to a fair trial — was violated. As discussed, the state appellate court's rejection of this claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

## IV. Jury Instructions and Sufficiency of the Evidence

Moore claims that his due process rights were violated when the trial court gave instructions on aiding and abetting that were incorrect under state law. As a result, he argues that his conviction was not supported by sufficient evidence. (Pet., Dkt. No. 1-1 at 34.)

According to Moore, the jury should have been instructed that he had to have the intent to steal at the time he aided in the assault on Gomer. It was not so instructed. Rather, according to Moore, the instructions impermissibly allowed the jury to convict him if it found he had formed the requisite intent <u>after</u> he joined in the assault.

The state appellate court rejected this claim because the trial court's instructions were correct under state law. (Ans., Dkt. No. 10-25 at 138.) That determination dooms Moore's

13

jury instruction claim. "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Because the appellate court found the instructions correct under state law, that is the end my inquiry on Moore's instructional claim.

Moore's claim that there was insufficient evidence to support his conviction does, however, state a cognizable federal constitutional claim. When reviewing a state court's conviction for sufficiency of the evidence, a federal court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. *Id.* at 324. "[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). In addition to this highly deferential standard, a federal court must accord "considerable deference" to a state court's determination that there was sufficient evidence under *Jackson*. *Id.*

Sufficient evidence existed to support the verdict. First, there is evidence that Moore formed the intent prior to the commission of the robbery. The defendants waited until Gomer's other friends left for the evening. Ehrhardt testified that Moore assisted in the assault (by raising the chair) and instructed him to lie on the floor, thereby facilitating the robbery, which occurred shortly after the assault. Second, Ehrhardt testified that he saw Moore wearing work gloves at the time he raised the chair, gloves he had not worn earlier in the evening. One could infer that he donned the gloves for the purpose of moving the studio equipment. Third, the state appellate court noted that it was "all but impossible" to think that the jury "believed [Moore] formed the intent to assist in the robbery only after he assisted in the assault on Gomer." (*Id.*) Hall's assertion that he assaulted the victims because he thought they were molesting Contreras "was not credible." (*Id.*) That explanation came only from Hall and failed to account for why the other people in the room when the molestation allegedly occurred did not see it. (*Id.*)

14

The state appellate court's rejection of Moore's claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

**V.      Sentence**

Moore claims his sentence of 35 years to life violates the Eighth Amendment. (Pet., Dkt. No. 1-1 at 38-39.) Habeas relief is not warranted on this claim because it is (i) unexhausted, and (ii) meritless.

**(i)      Exhaustion**

Moore never raised a Confrontation Clause claim to the state supreme court, or at any time in his state judicial proceedings. (Ans., Exs. C-H, Dkt. No. 25 (Moore's State Appellate and State Supreme Court Briefs).) Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are first required to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 515–16 (1982). Because the claim is unexhausted, it is DISMISSED.

**(ii)     Eighth Amendment**

Even if the claim were not dismissed, no habeas relief would be forthcoming because the claim lacks merit. A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment. *Solem v. Helm*, 463 U.S. 277, 303 (1983). Yet successful challenges to the proportionality of particular sentences are "exceedingly rare" outside "the context of capital punishment." *Id.* at 289-90. Eighth Amendment jurisprudence "gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle — the precise contours of which are unclear." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) (internal quotations and citations omitted). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (quoting *Harmelin v. Michigan*, 501

15

U.S. 957, 1001 (1991) (Kennedy, J., concurring)). Where it cannot be said as a threshold matter that the crime committed and the sentence imposed are grossly disproportionate, it is not appropriate to engage in a comparative analysis of the sentence received by the defendant to those received by other defendants for other crimes. *See United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998).

The Supreme Court upheld a life sentence without the possibility of parole for an offender whose sole felony conviction was for possessing 672 grams of cocaine. *Harmelin*, 501 U.S. at 961, 994. In *Andrade*, the Supreme Court, under the highly deferential AEDPA standard, upheld a sentence of two consecutive terms of 25 years to life for the nonviolent theft of $150 worth of videotapes. 538 U.S. at 77.

Were Moore's claim reviewed on the merits, it would fail because there was no Eighth Amendment violation. Moore was sentenced to 35 years to life for robbery and assault. If, as in *Harmelin*, a life sentence for a single nonviolent drug possession conviction did not violate the Eighth Amendment, and if, as in *Andrade*, a sentence of 50 years to life for the nonviolent theft of videotapes also did not, then Moore's sentence for robbery and assault also cannot. This claim is DENIED.

**CONCLUSION**

The state court's adjudication of Moore's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law. Further, the state court's findings did not result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Moore may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: April 10, 2018



WILLIAM H. ORRICK
United States District Judge